UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
(TAMPA DIVISION)


SPIN-BALLS, LLC,

      Plaintiff,

      vs.

                             Case No.
FIVE BELOW, INC.,            JURY DEMANDED
1616 HOLDINGS, INC.,
JM MANUFACTURING (HK) LTD.,
RMS INTERNATIONAL (USA) INC.

      Defendants.
_____/


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR TEMPORARY RESTRAINING ORDER AND EXPEDITED
DISCOVERY**


      Pursuant to Local Rule 6.01(a)(4), FIMT submits this memorandum of law

in support of its Motion for Temporary Restraining Order and Expedited Discovery

against certain defendants Five Below, Inc. ("Five Below"), 1616 Holdings, LLC

("1616 Holdings"), and JM Manufacturing (HK) Ltd. ("JMM") (herein, the

"Defendants") to enjoin the manufacture, distribution, offering for sale and sale in

the United States of products that infringe U.S. Patents 10,918,964 (the "'964

Patent") and 11,660,547 (the "547 Patent") (together, the "Patents-In-Suit"),

including Five Below SKUs 1922342843680, 1922342843673, and

1922342843697 and equivalent products (collectively, the "Magic Cube").

I.    Introduction

FIMT is a growing Florida toy company that generates one-third of its sales during the critical holiday shopping season – mostly from sales of its patented SHASHIBO® puzzle toy.  Five Below is a publicly traded retailer of cheap, trendy consumer products.  In concert with its distributor 1616 Holdings and its vendor JMM, Five Below launched the Magic Cube on a nationwide basis just before Black Friday 2023.  The inferior and unsafe Magic Cube clearly knocks-off SHASHIBO®, infringes FIMT's patents, and irreparably harms consumer trust.

Despite swift and repeated efforts by FIMT to avoid litigation, Defendants continue to sell thousands of Magic Cubes online and through its stores, necessitating the instant motion for TRO to stop the irreparable harm FIMT will suffer if Defendants continue to sell the infringing Magic Cube during the holidays.

II.    Factual Background

In 2011, Kevin Schlapik and Stephen Dennison founded FIMT. Schlapik Decl. at ¶2. FIMT would enter the toy market with the launch of its first product, SPINBALLS™, a patented LED Poi set that introduced the ancient art of spinning Poi to the worldwide public. *Id.* SPINBALLS™, an award-winning product, established FIMT as an innovator in the competitive toy industry. *Id.*

In 2019, FIMT launched SHASHIBO®, a top-selling, STEM/STEAM-accredited, and award-winning puzzle toy. Schlapik Decl. at ¶3. SHASHIBO® is a magnetized puzzle formed of twelve tetrahedral modules connected by flexible

adhesive stickers in a continuous loop. *Id.* Each tetrahedral module includes magnets that stabilize the puzzle in hundreds of unique configurations. *Id.*



**Fig. 1 – FIMT's SHASHIBO®**

Due to its satisfying combination of geometry, discovery, magnetism, and quality, FIMT has sold approximately five million SHASHIBO® units. Schlapik Decl. at ¶4. As of this writing, Amazon.com identifies SHASHIBO® as the #1 Best Seller across the entire category of Toys & Games. *Id.*; Exh. A.

The holidays are vital to FIMT's success: the company generates approximately one-third of its sales – mostly from SHASHIBO® – during the critical holiday shopping season including Black Friday, Cyber Monday, and the weeks immediately preceding Christmas Day. Schlapik Decl. at ¶5.

FIMT has invested in an extensive portfolio of intellectual properties, including trademarks, trade dress, copyrights, and patents.  Schlapik Decl. at ¶5. Presently, FIMT owns or has exclusive licenses to over fifty utility and design patents worldwide. *Id.* For its innovation, FIMT has earned numerous industry awards, including three Toy of The Year nominations for SHASHIBO®.  *Id.*

To protect its flagship SHASHIBO® product, FIMT's patent portfolio includes exclusive licenses to numerous patents including U.S. Patents 10,918,964 (the "'964 Patent") and 11,660,547 (the "'547 Patent") (together, the "Patents-In-Suit").  Schlapik Decl. at ¶6; *see also* Exh. B, C. The '964 and '547 Patents were respectively issued on February 16, 2021 and May 30, 2023. Exh. B, C.

The Patents-In-Suit relate to geometric toys and puzzles.  Exh. B, C.  As stated in the Abstract of the '547 Patent, "A geometric art toy includes first toy members and second toy members which are interconnected and magnetized in particular configurations such that the geometric art toy can be alternately and stably positioned in different configurations." Exh. C at Abstract.

Figures 6 and 12 of the Patents-In-Suit are reproduced below.  As shown below, the "star" and "cube" configurations are representative configurations in which the geometric art toys can be magnetically stabilized.



**Fig. 2 - '964 and '547 Patents Figs. 6 and 12**

In October 2023, FIMT discovered that Defendants were manufacturing, offering for sale and selling a very low-quality SHASHIBO® knock-off called the

Magic Cube. Schlapik Decl. at ¶7. Specifically, Five Below is the retailer of the Magic Cube, 1616 Holdings is the distributor, and JMM is the vendor. Exh. D, Q, R. The Magic Cube includes, but is not limited to, SKUs 1922342843680, 1922342843673, 1922342843697, and equivalent products. Exh. K.



**Fig. 3 – Five Below's Infringing Magic Cube**

Just like SHASHIBO®, Five Below's infringing Magic Cube is a puzzle that includes twelve tetrahedral modules hingedly coupled to each other by flexible adhesive stickers. Schlapik Decl. at ¶8. The Magic Cube can be manipulated between numerous configurations, including the same "star" and "cube" configurations as SHASHIBO®. *Id*.



**Fig. 4 - Five Below's Infringing Magic Cube**

The Magic Cube includes twenty-four magnets, including twelve ferrite magnets and twelve metal plate magnets. Schlapik Decl. at ¶9. The images below show one of each type of magnet. As shown below, each magnet is coupled to an external surface of its respective tetrahedral module by a flexible adhesive sticker. *Id.* When the Magic Cube is manipulated into different configurations including the star and cube configurations shown above, the magnets stabilize the puzzle. *Id.*



**Fig. 5 – Magic Cube's Magnets**

SHASHIBO® and the Magic Cube have very similar construction and functionality. Schlapik Decl. at ¶10. Both have the same proportional geometry

connected by stickers and magnets that stabilize the puzzle in configurations such as the distinctive SHASHIBO® star and cube configurations. *Id*.

However, unlike SHASHIBO®, the Magic Cube has a shockingly unsafe design, lacking *any* third-party testing indicia whatsoever, and a very low build quality. Schlapik Decl. at ¶11. In SHASHIBO®, for obvious safety reasons, each magnet is located inside its hollow tetrahedral module, the flexible adhesive stickers are very high quality and precisely applied to ensure user safety and to reduce the likelihood of breakage. *Id*. Even if, for example, the flexible adhesive stickers of a SHASHIBO® were peeled away, its design enables the magnets of SHASHIBO® to remain safely and securely *inside* the puzzle. *Id*.

Unlike SHASHIBO®, the Magic Cube magnets are held only by the low-quality stickers in external recesses on each tetrahedral module. Schlapik Decl. at ¶12. If the flexible adhesive stickers are peeled away, the magnets immediately fall out of the Magic Cube.[1] *Id*. Given the haphazard sticker placement and extremely poor build quality of the Magic Cube, it is very easy for magnets to come loose, presenting an obvious choking and ingestion risk to children. *Id*.; Exh. E.[2]

Alarmed at the obvious damage the Magic Cube would cause to FIMT's brand, finances, and market, especially during the critical 2023 holidays, FIMT instructed its legal counsel to compare the Magic Cube to the claims of the Patents-

---

[1] Each of six Magic Cubes examined after test purchases had peeling and misapplied decals which exhibited tearing after only minor manipulation and play.
[2] *See* Carmela Sosa, MD, The Dangers of Rare Earth Magnets, Valley Children's Healthcare Blog, Aug. 3, 2022, https://www.valleychildrens.org/blog/the-dangers-of-rare-earth-magnets.

In-Suit. Schlapik Decl. at ¶13. Upon verifying that the Magic Cube infringed the Patents-In-Suit, FIMT, through its legal counsel, immediately placed Defendants on express written notice of its infringement and demanded that Defendants cease and desist from their infringement of FIMT's patents. *See* "10/23/23 Notice and Demand" attached hereto as Exhibit F.

While FIMT confirmed Defendants' receipt of its written notice to its Headquarters and Florida Registered Agent, FIMT's 10/23/23 Notice and Demand went ignored for more than three weeks. Schlapik Decl. at ¶14.

Instead of ceasing from its infringement of the Patents-In-Suit upon being placed on express notice, in the week before the 2023 Black Friday, Defendants escalated their infringement by launching Magic Cube for nationwide purchase on www.fivebelow.com and expanding their distribution to hundreds of Five Below retail stores nationwide. Schlapik Decl. at ¶15; Exh. D.

On November 16, 2023, after learning of Defendants' continued, willful and escalated infringement via www.fivebelow.com, in a final effort to avoid litigation, FIMT, again through its counsel, sent Defendants a second notice and demand to cease and desist. *See* "11/16/23 Notice and Demand," attached hereto as Exhibit G.

On November 17, 2023, approximately four weeks following FIMT's 10/23/23 Notice and Demand, counsel for Defendant Five Below responded to FIMT's counsel with a brief boilerplate e-mail communication confirming Defendant Five Below's "receipt of [] recent letters (attached) sent on behalf of Spinballs, LLC d/b/a Fun In Motion Toys regarding the Calmagami, Led Poi Balls,

and Magic Cube toy products sold in our stores." Exhibit H.  The responsive e-mail failed to confirm or even suggest that Defendants would comply with the demand to cease and desist from further infringement of the Patents-In-Suit.  *Id.*

As of the filing date of this action, Defendants still refuse to cease and desist from their willful infringement of the Patents-In-Suit. Schlapik Decl. at ¶18.

FIMT now moves for a TRO against Defendants to prevent further and imminent irreparable injury to FIMT resulting from Defendants' sales of the infringing Magic Cube during the critical 2023 holiday season.

III.    This Court Should Issue a TRO Against Defendants

a)  FIMT Is the Patentee

A "patentee" may bring a civil action for patent infringement. 35 U.S.C. § 281.  An exclusive licensee is a "patentee" under §281 if all substantial rights in the patent are transferred to the licensee.  *Univ. of S. Fla. Research Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1318-1319 (Fed. Cir. 2021) (citing *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1358–59 (Fed. Cir. 2010)).

A patentee has standing under Article III if it has an exclusionary right in a patent that, if violated by another, would cause it to suffer legal injury." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010).

FIMT is the exclusive licensee of the '964 and '547 Patents from the inventor, Andreas Hoenigschmid ("Mr. Hoenigschmid").  Schlapik Decl. at ¶6.   *See* Third Amendment to License Agreement dated November 20, 2023, attached as

Exhibit I (the "ELA").  The ELA expressly transfers all substantial rights to FIMT: "Licensor hereby grants and assigns to Licensee substantially all rights, including the right to sue for infringement and to obtain equitable relief" and, "the sole and exclusive right to use, manufacture, market, sell, import and distribute any and all goods, including the Geometric Puzzles, incorporating or using the Property, inclusive of any goods using, incorporating, relating to or practicing the methods, disclosures and/or claims of the foregoing patents and patent applications." Exhibit I at page 1, Section 2(a); page 2, Section 4.  This shows that FIMT is the patentee. *Univ. of S. Fla. Research Found., Inc.*, 19 F.4th at 1318-1319.

FIMT has Article III standing because Defendant Five Below's continued sale of the Magic Cube violates its rights to exclude others from practicing the Patents-In-Suit, in violation of 35 U.S.C. §271 as detailed below.

b) <u>This Court Has Authority to Issue a TRO</u>

This Court has personal jurisdiction over the Defendants because the Defendants directly target their business activities towards consumers in the United States, including consumers in Florida and this Judicial District and Division, by offering to sell and selling the Magic Cube nationwide through www.fivebelow.com and through a network of 1,481 retail stores in 44 states, with 151 Five Below stores in the State of Florida alone.  Exh. J; Exh. D. Additionally, Defendants offer shipping of the Magic Cube to Florida Residents from www.fivebelow.com, a fully interactive commercial website and have sold the Magic Cube to residents of Florida, in this district and division. Exh. K; Exh. D.

This Court has original subject matter jurisdiction over the patent infringement claims in this action pursuant to 28 U.S.C. § 1338(a)-(b), 28 U.S.C. § 1331, and 35 U.S.C. § 1, et seq.

Venue is proper pursuant to 28 U.S.C. § 1400(b) because the Defendants have sold, and continue to sell, the infringing Magic Cube through its retail store network that includes approximately fifty Five Below stores located in this District and, upon information and belief, to persons residing in this District via its ecommerce website. Exh. K; Exh. D. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC.*, 137 S.Ct. 1514, 1519 (2017). The corporate-owned and operated Five Below stores located in this District are "regular and established" places of business where infringement is actively occurring. *Id.*

The Patent Act, 35 U.S.C. § 283, authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an ex parte TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b).

Local Rule 6.01(a) requires that a motion for a TRO include a precise and verified description of the conduct and the persons subject to restraint and an explanation of the amount and form of the required security. M.D. Fla. L.R.6.01(a). The motion must be accompanied by a proposed order and a legal

memorandum that establishes the following: (1) the likelihood that the movant ultimately will prevail on the merits of the claim, (2) the irreparable nature of the threatened injury and the reason that notice is impractical, (3) the harm that might result absent a restraining order, and (4) the nature and extent of any public interest affected. *Id.* at 6.01(b); *see also Lead Creation Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 2023 U.S. Dist. LEXIS 25025 (M.D. Fla. Feb. 14, 2023) (granting ex parte TRO against 20 Schedule A defendants for patent infringement); *see also Aevoe Corp. v. AE Tech Co.*, 727 F.3d 1375, 1377-78 (Fed. Cir. 2013) (declining to exercise jurisdiction over appeal, where district court: granted TRO in favor of Aevoe for patent infringement and enjoined AE Tech and its distributor from marketing its competing touch screen protector).

As detailed below, FIMT has met its high burden to show that this Court should issue a TRO against Defendants.

### c) FIMT Is Likely To Prevail On Its Patent Infringement Claims

To prevail on at least one patent infringement claim, FIMT must establish that the Magic Cube has every feature of *at least one claim* of *either* the '964 Patent or the '547 Patent. As clearly shown in the claim charts attached as exhibits to this memorandum, the Magic Cube has *every* feature of *at least* Claim 7 of the '964 Patent <u>and</u> at least Claim 12 of the '547 Patent.

### i. Relevant Patent Law

Infringement of a U.S. patent occurs when a party, without authority or license, makes, uses, offers to sell, or sells any patented invention in the United

States. 35 U.S.C. §271(a). This "direct infringement" occurs when an accused product meets each limitation of at least one asserted patent claim, either literally or under the doctrine of equivalents. *Voter Verified Inc. v. Election Sys. & Software Inc.*, 745 F.Supp.2d 1237, 1253 (M.D. Fla. 2010). The doctrine of equivalents provides protection from knockoffs that are only trivially different from the literal claim language. Under the doctrine of equivalents, an accused device that does not literally meet a claim limitation is nevertheless deemed to meet that claim limitation if it performs "the same work in substantially the same way [to] accomplish substantially the same result." *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 607-608 (1950).

A party who actively induces infringement of a patent by another, or who sells a material part of a patented invention, knowing the same to be especially made for use in an infringement of such patent, also infringes. 35 U.S.C. §271(b), (c); *see Global-Tech Appliances, Inc. v. Seb S. A.*, 563 U.S. 754, 766 (2011).

To determine whether an accused product infringes a patent, it is necessary to first determine the scope and meaning of the asserted claims, and then to compare the properly construed claims with the allegedly infringing device. *Voter Verified Inc.*, 745 F.Supp.2d at 1252.

The claim terms of an issued U.S. Patent are generally given their ordinary and customary meaning, i.e., the meaning that the term would have to a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.*,

90 F.3d 1576, 1582 (Fed. Cir. 1996)).  This is informed foremost by the patent claims, specification, and prosecution history ("intrinsic evidence").  *Vitronics*, 90 F.3d at 1582.  A district court need only construe disputed claim terms.  *Wellman, Inc. v. Eastman Chemical Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011).

Here, the Defendants directly infringe both Patents-In-Suit under §271(a) by offering for sale and selling of the Magic Cube.  And because the Defendants have actual knowledge that the Magic Cube infringes, they induce (under §271(b)) their suppliers and customers to infringe both Patents-In-Suit, and contributorily infringe under §271(c) by selling all materials parts of the Magic Cube.

ii.    The '964 and '547 Patents Are Valid and Enforceable

The '964 and '547 Patents were respectively issued on February 16, 2021 and May 30, 2023 for "Three-Dimensional Geometric Art Toy(s)" and benefit from a presumption of validity. Exh. B at page 1; Exh. C at page 1. 35 U.S.C. §282.  There are no maintenance fees due for either Patent-In-Suit, and the USPTO currently shows both as a "Patented Case." Exh. L; Exh. M.  Neither Patent-In-Suit has been challenged in a court of law or administrative proceeding.  Schlapik Decl. at ¶6. Both Patents-In-Suit are therefore presumed valid and enforceable.

The ELA gives FIMT the right to sue on the '964 and '547 Patents.  Exhibit I at page 1, Section 2(a); page 2, Section 4. FIMT has not licensed the Defendants to use the Patents-In-Suit.  Schlapik Decl. at ¶6.

iii.    The Magic Cube Infringes The '964 Patent

The '964 Patent relates to Three-Dimensional Geometric Art Toys and has fifteen claims defining the scope of protection.  Ex. B at Col. 13, line 23 – Col. 14, line 57. Claims 1 and 7 are the "independent" claims, i.e., the broadest claims.

Claim 7 recites:

> **7**. A geometric art toy comprising:
> six first toy members formed as tetrahedrons, each first toy member including less than three first magnets, wherein the less than three first magnets are the only magnets of each first toy member and are coupled to less than three faces of each first toy member; and
> six second toy members formed as tetrahedrons, each second toy member including less than three second magnets, wherein the less than three second magnets are the only magnets of each second toy member and are coupled to less than three faces of each second toy member;
> wherein each first toy member is directly and movably coupled to another first toy member and to one of the second toy members, such that each first toy member is configured to magnetically couple with the second toy member to which it is directly and movably coupled, but not with the other first toy member to which it is directly and movably coupled.

Ex. B at Col. 14, lines 8-25.

The first clause of claim 7 defines six "first toy members" of the geometric art toy. The second clause defines six "second toy members."  The third clause defines how the "first toy members" and "second toy members" are "directly and movably coupled."

The ordinary and customary meaning of claim 7 is evident from the claim itself and the text of the '964 Patent. Therefore, it is unnecessary to propose any specific claim constructions. *Wellman, Inc.*, 642 F.3d at 1361.

FIMT submits a detailed claim chart objectively comparing the Magic Cube to claim 7 of the '964 Patent. Exhibit N.

The Magic Cube – a low-quality SHASHIBO® knock-off – literally has every single limitation of independent claim 7, including "six first toy members" and "six second toy members" and "wherein each first toy member is directly and movably coupled to another first toy member and to one of the second toy members, such that each first toy member is configured to magnetically couple with the second toy member to which it is directly and movably coupled, but not with the other first toy member to which it is directly and movably coupled." Exh. N.

Accordingly, the Magic Cube directly infringes claim 7. *Voter Verified Inc.*, 745 F.Supp.2d at 1253.

Defendants, as makers, distributors, and sellers of the infringing Magic Cube, therefore directly infringe the '964 Patent under 35 U.S.C. §271(a). *Id.* Further, because Defendants *know* from the 10/23/23 Notice and Demand and the 11/16/23 Notice and Demand that the Magic Cube infringes the '964 Patent and nevertheless continue to induce their suppliers to manufacture and import the Magic Cube, continue to induce their customers to buy and use the Magic Cube, and sell all material parts of the Magic Cube, the Defendants also infringe the '964 Patent under 35 U.S.C. §271(b), (c). *Global-Tech Appliances, Inc.*, 563 U.S. at 766.

-16-

For these reasons, FIMT is likely to prevail on its claim of infringement of the '964 Patent.

iv.   The Magic Cube Infringes The '547 Patent

The '547 Patent also relates to Three-Dimensional Geometric Art Toys and has eighteen claims.  Exh. C at Col. 13, line 23 – Col. 15, line 6. Claims 1, 12, and 18 are the "independent" claims, i.e., the broadest claims.  As shown below, the Magic Cube has all limitations of independent claim 12, which recites:

15   **12**. A puzzle, comprising:
twelve tetrahedral bodies coupled together by hinges, wherein each tetrahedral body comprises six edges and four faces and is coupled along two edges of the six edges by a plurality of the hinges to two different
20   tetrahedral bodies of the twelve tetrahedral bodies, wherein each tetrahedral body comprises at least one and up to three magnets, wherein the at least one and up to three magnets are the only magnets of each tetrahedral body and each magnet is positioned adjacent to a
25   different face of the four faces, wherein each magnet of each tetrahedral body has a polarity and a position which is configured to magnetically couple with at least one of the magnets of at least one other of the twelve tetrahedral bodies, wherein in
30   a first configuration of the twelve tetrahedral bodies, each tetrahedral body magnetically couples with only one of the two tetrahedral bodies to which it is coupled along the two edges.

Ex. C at Col. 14, lines 15-33.

The first clause of claim 12 defines twelve "tetrahedral bodies" of the puzzle. The second clause defines the number and position of magnets of each tetrahedral body.  The third clause defines how the magnets magnetically couple together.

-17-

The ordinary and customary meaning of claim 12 is evident from the claim itself and the text of the '547 Patent; therefore, it is unnecessary to propose any specific claim constructions. *Wellman, Inc.*, 642 F.3d at 1361.

As with the '964 Patent, FIMT submits a detailed claim chart objectively comparing the Magic Cube to claim 12 of the '547 Patent.  Exhibit O.

As shown in the claim chart, the Magic Cube meets every single limitation of independent claim 12, including "twelve tetrahedral bodies" each of which "comprises at least one and up to three magnets," and "wherein each magnet of each tetrahedral body has a polarity and a position which is configured to magnetically couple with at least one of the magnets of at least one other of the twelve tetrahedral bodies, wherein in a first configuration of the twelve tetrahedral bodies, each tetrahedral body magnetically couples with only one of the two tetrahedral bodies to which it is coupled along the two edges." Exh. O.

Accordingly, the Magic Cube literally infringes claim 12.  *Voter Verified*, 745 F.Supp.2d at 1253.

Defendants, as makers and sellers of the Magic Cube, infringe the '547 Patent under 35 U.S.C. §271(a).  *Id.* Further, because the Defendants know from the 10/23/23 Notice and Demand and the 11/16/23 Notice and Demand that the Magic Cube infringes the '547 Patent and nevertheless induce their suppliers to manufacture and import the Magic Cube, induce their customers to buy and use the Magic Cube, and sell all material parts of the Magic Cube, the Defendants also infringe the '547 Patent under 35 U.S.C. §271(b), (c).  *Global-Tech*, 563 U.S. at 766.

For these reasons, FIMT is likely to prevail on its claim of infringement of the '547 Patent.

> d) <u>FIMT Will Incur Further, Imminent and Certain Irreparable Injury If Defendants Continue Selling The Magic Cube During the Holidays</u>

FIMT respectfully compels and prays this Court to grant equitable relief immediately, as further notice to Defendants would be futile. FIMT has twice notified Defendants of their ongoing infringement, and Defendants have acknowledged receipt of both notices. Exh. F; Exh. G; Exh. H. Alarmingly, in the face of express notice of infringement, Defendants escalated their infringing activity by launching the Magic Cube for nationwide purchase just before Black Friday. Schlapik Decl. at ¶15.

Because FIMT generates one-third of its sales during the holidays – mostly from SHASHIBO® – the proliferation of the infringing and inferior Magic Cube during December 2023 will irreparably destroy consumer trust, to the extreme prejudice of FIMT. Schlapik Decl. at ¶5.

As detailed in the accompanying Complaint, Defendants' infringement of the Patents-In-Suit is ongoing simultaneously with infringement of FIMT's trademarks and trade dress. Schlapik Decl. at ¶18. Defendants' willful infringement of FIMT's intellectual property will cause FIMT irreparable harm by effectively and unlawfully stripping FIMT of its ability to control its exclusive IP rights, product quality and customer satisfaction. *Id*. at ¶19. In essence, Defendants' infringement of FIMT's intellectual property unfairly cheapens

FIMT's brand.  *Id.*  Defendants are only able to sell the Magic Cube at $5 because they are stealing FIMT's exclusive IP rights as the sole lawful source of origin of its authentic SHASHIBO® product.  *Id.*  $5 is less than half FIMT's wholesale price to its resellers and 20% of its pre-infringement retail price. *Id.*

Each Magic Cube sold by Five Below is *at least one* FIMT product not sold. Schlapik Decl. at ¶20.   FIMT sells multiple puzzle toys, including the SHASHIBO®, CUBENDI™, and DUOMOTO®.   *Id.*   FIMT customers often purchase multiple SHASHIBO® units or different products. *Id.*  In fact, FIMT markets SHASHIBO® and other products through its Collect and Connect™ campaign that encourages users to collect multiple units and connect them to create more complex shapes.  *Id.* For this reason, every Magic Cube sale will likely cause FIMT to lose multiple product sales due to consumer disappointment with their first purchase.  *Id.*  It is impossible to know how many multiple-unit customers FIMT is currently losing due to the Defendants' infringement.  *Id.*

Consumers will confuse the unlicensed Magic Cube for SHASHIBO®, so negative experiences with the Magic Cube will unjustifiably hurt FIMT's valuable reputation and goodwill. Schlapik Decl. at ¶21.

Specifically, the proliferation of low-quality SHASHIBO® knock-offs leads to low consumer satisfaction in the broader market for magnetic puzzle toys, which harms the market itself and FIMT's reputation and goodwill, which depends on a favorable perception of FIMTs quality magnetic puzzle toys.  Schlapik Decl. at ¶22. For example, would-be consumers who are aware of poor customer satisfaction

related to the Magic Cube will not purchase any puzzle toys at all, creating an immeasurable spillover from negative Magic Cube experiences. *Id.*

Defendants' widespread infringement through its website, marketing and vast network of retail stores will induce others to infringe, causing infringing goods to further flood the market and spiral out of control, causing immeasurable harm which cannot be remedied through monetary damages. Schlapik Decl. at ¶23.

Moreover, the Magic Cube poses a significant safety risk to children because the magnets may be readily dislodged from their external recesses and pose a choking hazard, or worse, an ingestion hazard. *Id.* at ¶24.  FIMT invests in careful product design and extensive safety testing to avoid this type of unacceptable safety risk. *Id.*  Serious injury to even a single consumer as a result of this real and present danger could be catastrophic, rendering irreparable harm to consumers, FIMT and the SHASHIBO® brand for which monetary damages would be inadequate. *Id.*

Put simply, Defendants' unfair misappropriation of FIMT's intellectual property is driving sales of the infringing Magic Cube at the unrecoverable expense of FIMT's brand.  The Magic Cube is of exceedingly and deceivingly poor quality compared to SHASHIBO® and will irreparably damage consumer opinion, expectations, repeat purchases and, if physical injury were to occur through use of the Magic Cube, effectively cause catastrophic and irreparable harm to the goodwill and reputation of FIMT, its flagship product, SHASHIBO® and consumers.

Accordingly, Defendants Five Below, Inc., 1616 Holdings, Inc., and JM Manufacturing have stripped FIMT of control of its exclusive intellectual property

and there is no adequate remedy at law.  Immediate equitable relief is necessary to avoid further irreparable harm.  *See Lead Creation Inc.*, 2023 U.S. Dist. LEXIS 25025 at \*12.

    e)  <u>The Harm Suffered By FIMT In The Absence Of An Injunction Would</u>
<u>Exceed The Harm Suffered By The Defendants If An Injunction Issues</u>

With fewer than thirty full-time employees, FIMT is a relatively small company.  Schlapik Decl. at ¶25.  FIMT generates approximately one-third of its sales during the critical holiday shopping season – mostly from SHASHIBO® sales.  *Id* at ¶5. As such, FIMT will suffer immeasurable and irreparable harm if the Defendants continue selling the Magic Cube during the critically important Q4 holiday season.  *Id* at ¶¶5, 25.

In stark comparison, Five Below, Inc. and its wholly-owned subsidiary, 1616 Holdings, Inc., is a publicly traded company (NASDAQ: FIVE) with a current market capitalization of $10.6 billion.  Exhibit P.  The Magic Cube is just one product out of thousands sold by the Defendants.

Therefore, the harm to be suffered by FIMT if an injunction does not issue is far greater than any harm the Defendants will suffer if an injunction wrongly issues.  *See Lead Creation Inc.*, 2023 U.S. Dist. LEXIS 25025 at \*14.

    f)  <u>The Magic Cube Is Of Extremely Poor Quality, Poses A Serious Safety</u>
<u>Risk To The Public, And Will Confuse And Deceive Consumers</u>

The public interest is served by enjoining Defendants from selling the Magic Cube.  *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336 (Fed. Cir. 2013)

(""[T]he public has a greater interest in acquiring new technology through the protections provided by the Patent Act than it has in buying "cheaper knock-offs."). First, consumers will confuse the Magic Cube for an FIMT product, even though the Magic Cube is unlicensed and of deceivingly poor quality with hidden safety concerns. Schlapik Decl. at ¶21. Children who play with the Magic Cube are at risk of choking on or ingesting the poorly-secured magnets of the Magic Cube, which are easily dislodged from their external recesses due to its poor build quality. Schlapik Decl. at ¶¶12, 24. Specifically, the poor-quality adhesive stickers of the Magic Cube are applied haphazardly and are easily peeled back, causing the magnets to fall out. *Id.*

Therefore, the public interest is undoubtedly served by issuing the TRO. *See Lead Creation Inc.*, 2023 U.S. Dist. LEXIS 25025 at *14.

IV.    The Equitable Relief Sought Is Appropriate

There is no adequate remedy at law and a TRO is necessary to stop the imminent, certain, irreparable and unquantifiable harm FIMT will suffer from ongoing unlawful and infringing sales of the Magic Cube.

Although FIMT is aware of the identities of the captioned Defendants, there are likely additional entities, agents, employees, suppliers, distributors, manufacturers, attorneys, and any persons acting in concert, participation or agents by, for or with Defendants in relation to the design, production, distribution, and sale of the Magic Cube. To avoid further irreparable harm to FIMT, narrow expedited discovery is necessary in relation to the identities and

locations of said parties, as well as the quantity and location of Magic Cubes and equivalent products in Defendants' possession and control such that the TRO may serve its purpose. *See Lead Creation Inc.*, 2023 U.S. Dist. LEXIS 25025 at *14.

Pursuant to Local Rule 6.01(a)(5), FIMT submits a Proposed Order which is narrowly tailored to the Magic Cube and equivalent products, to the parties that make, sell, offer for sale, import, and/or use the Magic Cube, and for a limited period of fourteen (14) days. Thus, mindful of the extraordinary nature of a TRO, the Proposed TRO sought avoids irreparable harm to FIMT while minimizing prejudice to Defendants until a full hearing can be held on a preliminary injunction and the relevant additional parties can be identified and joined.

V.    Conclusion

For the reasons set forth hereinabove, FIMT respectfully requests that this honorable Court enter a TRO in the proposed form submitted herewith.


Dated:  November 30, 2023          Respectfully submitted,

                                   */s/ Joseph R. Sozzani*
                                   Joseph R. Sozzani, Esq.
                                   Fla. Bar No. 120297
                                   Board Certified Intellectual Property Law
                                   INFINITY IP, P.L.L.C.
                                   222 West Bay Drive
                                   Largo, FL 33770
                                   Phone:  (727) 687-8814
                                   E-mail: jsozzani@infinityiplaw.com

                                   *Counsel for Plaintiff*
                                   SPIN-BALLS, LLC