<u>UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION</u>

Spin-balls, LLC,

    Plaintiff,

vs.                                                Case No.

FIVE BELOW, INC.,
1616 HOLDINGS, INC.,
JM MANUFACTURING (HK) LTD.,
RMS INTERNATIONAL (USA) INC.

    Defendants.

_____/

## **DECLARATION OF KEVIN D. SCHLAPIK**

I, Kevin D. Schlapik, declare as follows:

1. I am the President and co-founder of Spin-balls, LLC d/b/a Fun In Motion Toys ("FIMT"), a Florida limited liability company registered with the Florida Secretary of State. I am over 18 years of age and competent to make this declaration. I submit this declaration in support of Plaintiff, Spin-balls, LLC's Motion for Temporary Restraining Order and Expedited Discovery. The facts stated herein are based upon my personal knowledge and if called to testify I could and would do so competently.

2. In 2011, my business partner, Stephen James Dennison, and I founded FIMT. FIMT entered the toy market with the launch of its first product, SPINBALLS™, a patented and award-winning LED Poi set that introduced

the ancient art of spinning Poi to the worldwide public. Spinballs established FIMT as an innovator in the competitive toy industry.

3. In 2019, FIMT launched SHASHIBO®, which is now a top-selling, STEM/STEAM accredited, and award-winning puzzle toy. SHASHIBO® is a magnetized puzzle formed of twelve tetrahedral modules connected by flexible adhesive stickers in a continuous loop. Each tetrahedral module includes magnets that stabilize the puzzle in hundreds of unique configurations, as shown below.



4. Due to its satisfying combination of geometry, discovery, magnetism, and quality, FIMT has sold approximately five million units of SHASHIBO® to date. In fact, Amazon.com currently identifies SHASHIBO® as the #1 Best Seller across the entire category of Toys & Games.

5. FIMT's success is due, in large part, to its development and effective marketing of high-quality products that are unique, exciting, and safe. A significant percentage of FIMT's sales every year are earned during the

holiday season, including Black Friday, Cyber Monday, and the weeks immediately preceding Christmas Day. Last year, FIMT generated approximately one-third of its sales during the holidays – mostly from SHASHIBO® sales. So, the inferior and unsafe Magic Cube will destroy the trust of consumers at a critical time for FIMT. To protect its products, FIMT has invested in an extensive portfolio of intellectual properties, including trademarks, trade dress, copyrights, and patents. Presently, FIMT owns or has exclusive license to over fifty issued utility and design patents worldwide. For its innovation, FIMT has earned numerous industry awards, including three Toy of the Year nominations for its SHASHIBO® product at the New York Toy Fair.

6. To protect its flagship and most important SHASHIBO® product, FIMT's patent portfolio includes exclusive licenses to numerous patents including U.S. Patents 10,918,964 (the "'964 Patent") and 11,660,547 (the "'547 Patent"). FIMT is the exclusive licensee of the '964 and '547 Patents from the inventor, Andreas Hoenigschmid. FIMT licenses substantially all rights under the '964 Patent and '547 Patents, including the right to sue. To the best of my knowledge, neither '964 Patent nor the '547 Patent has been challenged in a court of law or administrative proceeding. FIMT has not licensed the Defendants to use either the '964 Patent or the '547 Patent.

7. In October 2023, FIMT discovered the low-quality SHASHIBO® knock-off shown below and called the Magnetic Magic Cube (the "Magic Cube") for

sale at a Five Below retail location. FIMT learned that the Magic Cube included several variations having the same construction and function, including SKUs 1922342843680, 1922342843673, and 1922342843697.



8. The Magic Cube is highly similar to SHASHIBO® in terms of its geometry and function. Just like SHASHIBO®, the Magic Cube is a puzzle that includes twelve tetrahedral modules hingedly coupled to each other by flexible adhesive stickers. The Magic Cube can be manipulated between numerous configurations, including the same "star" and "cube" configurations as SHASHIBO® and shown below.



-4-

9. The Magic Cube includes twenty-four magnets, including twelve ferrite magnets (although its packaging falsely claims the magnets are rare earth magnets, like those found in an authentic SHASHIBO® product) and twelve steel plate magnets. Each magnet is coupled to an external surface of its respective tetrahedral module by a flexible adhesive sticker. When the Magic Cube is manipulated into different configurations including the star and cube configurations shown above, the magnets magnetically stabilize the whole puzzle.



10. SHASHIBO® and the Magic Cube have very similar construction to achieve the same basic functionality. Both have the same proportional geometry connected by flexible adhesive stickers and have magnets that stabilize the puzzle in the same respective configurations such as the distinctive SHASHIBO® star and cube configurations.

11. However, unlike SHASHIBO®, the Magic Cube has a shockingly unsafe design, lacking any third-party testing indicia, and a very low build quality. In SHASHIBO®, for obvious safety reasons, each magnet is located inside

its hollow tetrahedral module and the high quality flexible adhesive stickers are precisely applied to ensure user safety and to reduce the likelihood of breakage. Even if, for example, the flexible adhesive stickers of a SHASHIBO® were peeled away, this design enables the magnets of SHASHIBO® to remain safely and securely inside the puzzle.

12. Unlike SHASHIBO®, the magnets of the Magic Cube are held only by the extremely low-quality stickers in external recesses on each tetrahedral module. If the flexible adhesive stickers are peeled away, the magnets immediately fall out of the Magic Cube. Given the haphazard sticker placement and extremely poor build quality of the Magic Cube, it is very easy for magnets to come loose, presenting an obvious choking risk to children, or worse, an ingestion hazard.

13. When I learned of the Magic Cube, I was alarmed at the obvious damage that product would cause to FIMT's brand, finances, and market, especially during the critical 2023 holidays. For this reason, FIMT instructed its legal counsel to compare the Magic Cube to the claims of FIMT's patents. Upon verifying that the Magic Cube infringed the '964 Patent and the '547 Patent, FIMT, through its legal counsel, immediately placed Defendants on express written notice of its infringement and demanded Defendants cease and desist from their infringement of FIMT's patents.

14. While the Defendants' confirmed receipt of FIMT's written notice to Defendants' Headquarters and Florida Registered Agent, FIMT's 10/23/23 Notice and Demand went ignored for more than three weeks.

15. FIMT became aware during the week of November 12, 2023 – the week before Black Friday – that Defendants launched the Magic Cube for nationwide ecommerce purchase on [www.fivebelow.com](www.fivebelow.com) and expanded their distribution to hundreds of Five Below retail stores nationwide.

16. On November 16, 2023, FIMT sent Defendants a second notice and demand to cease and desist.

17. I understand that on November 17, 2023, FIMT's legal counsel received an E-mail Communication from Shaton C. Menzie, Corporate Counsel, Intellectual Property for Five Below, Inc. It is my understanding that this e-mail did not include any promise to cease and desist from further infringement of the '964 Patent and '547 Patent.

18. To the best of my knowledge, the Defendants continue to sell the Magic Cube through [www.fivebelow.com](www.fivebelow.com). Defendants' infringement of the '964 Patent and '547 Patent is ongoing simultaneously with the infringement of FIMT's trademarks and trade dress.

19. Defendants' willful infringement of FIMT's intellectual property will cause FIMT irreparable harm by effectively stripping FIMT of its ability to control its exclusive IP rights, product quality and customer satisfaction. In essence, Defendants' infringement of FIMT's intellectual property unfairly cheapens

the FIMT and SHASHIBO® brands. Five Below's Magic Cube is inferior, uses extremely poor-quality materials and poses a potentially dangerous risk to consumers, especially young children. Defendants are only able to sell the Magic Cube because they are stealing FIMT's exclusive intellectual property rights. FIMT is the sole and exclusive lawful source of origin of its authentic SHASHIBO® product worldwide. Five Below's retail price is less than half FIMT's wholesale price to its resellers and 20% of its pre-infringement retail price.

20. Obviously, each Magic Cube sold is *at least one* FIMT product not sold. FIMT sells multiple puzzle toys, including the SHASHIBO®, CUBENDI™, and DUOMOTO®. FIMT customers often purchase multiple SHASHIBO® units or different products from FIMT. In fact, FIMT markets SHASHIBO® and other geometric puzzles through its Collect and Connect campaign that encourages users to collect multiple SHASHIBO® units and connect them together to create more complex shapes. *Id.* For this reason, every Magic Cube sale will likely cause FIMT to lose multiple product sales due to consumer disappointment with their first purchase. *Id.* It is impossible to know how many multiple-unit customers FIMT is currently losing due to the Defendants' infringement and the customer dissatisfaction resulting from the inferior Magic Cube.

21. Also, in my experience with knock-off products, consumers will confuse the Magic Cube for SHASHIBO® even though the Magic Cube is unlicensed and

of poor quality, so negative experiences with the Magic Cube will unjustifiably hurt FIMT's reputation and goodwill.

22. Also, the proliferation of low-quality SHASHIBO® knock-offs will undoubtedly lead to low customer satisfaction in the broader market for magnetic puzzle toys, which harms the market itself and FIMT's reputation. For example, would-be consumers who are aware of poor customer satisfaction related to the Magic Cube will choose not to purchase any puzzle toys at all. In this way, low customer satisfaction has a spillover effect to other would-be consumers. This spillover effect is impossible to measure, but certain to occur. The success of FIMT depends on a favorable perception of FIMT's quality magnetic puzzle toys.

23. Defendants' widespread infringement through its website, marketing and vast network of retail stores will induce others to infringe, causing infringing goods to further flood the market and spiral out of control, causing immeasurable harm which cannot be remedied through monetary damages.

24. Equally importantly, the Magic Cube is a significant safety risk to children because the magnets may be readily dislodged from their external recesses and pose a choking and ingestion hazard. This can easily occur if the low-quality adhesive stickers of the Magic Cube are peeled back. FIMT invests in careful product design and extensive safety testing to avoid this type of unacceptable safety risk. Serious injury to even a single consumer as a result

of this real and present danger could be catastrophic, rendering irreparable harm to consumers, FIMT and the SHASHIBO® brand.

25. The health of FIMT – a small company with fewer than thirty full-time employees – is highly dependent upon sales of SHASHIBO® during the holidays, including Black Friday, Cyber Monday, and before Christmas. As such, FIMT will suffer immeasurable and irreparable harm if the Defendants continue selling the Magic Cube during the critically important Q4 Holiday Season.

26. For these reasons, the only way to avoid further irreparable injury to FIMT is by immediately halting sales of the Magic Cube.

I declare under penalty of perjury that the above information is true and correct. I further declare that all statements made upon information and belief are made from my personal knowledge and belief and believed to be true and accurate.

Executed on this 27th day of November 2023 in Ft. Lauderdale, Florida.

_____
Kevin D. Schlapik, President
SPIN-BALLS, LLC